**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| CAROL COMER,<br><br>Plaintiff,<br><br>v.<br><br>16TH CIRCUIT COURT OF JACKSON COUNTY, MISSOURI,<br><br>Defendant. | ) | Case No. 4:26-cv-00281-RK |

**ORDER**

This is an employment-discrimination case brought by Plaintiff Carol Comer against their employer, Defendant 16th Circuit Court of Jackson County, Missouri ("16th Circuit Court"). Before the Court is Defendant 16th Circuit Court's partial motion to dismiss several counts in Plaintiff's Amended Complaint, (Doc. 15),[1] for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 6.) The motion to dismiss is fully briefed. (Docs. 8 & 9.)

After careful consideration and review, and for the reasons explained below, the Court **ORDERS** that the partial motion to dismiss is **GRANTED in part** as to Counts 5-10 and is **DENIED in part** as to Counts 1 and 2. Counts 5-10 are **DISMISSED without prejudice** for failing to state a claim, with Counts 1 and 2 remaining, alongside Counts 3, 4, 11, and 12, which were not addressed in the partial motion to dismiss.

**Background**

Plaintiff is a nonbinary or "gender nonconforming person." (Doc. 15 at ¶¶ 2 & 18.) Plaintiff, assigned the sex of female at birth, does not comport with typical accompanying gender stereotypes but presents more masculine or more feminine without a consistent gender appearance and uses gender-neutral pronouns. (*Id.* at ¶¶ 18, 19, 20.) Plaintiff has Post-Traumatic Stress Disorder ("PTSD") relating to interpersonal conflict after suffering extreme physical and mental abuse as a child. (*Id.* at ¶ 22.)

[1] Defendant 16th Circuit Court's Notice of Removal initially attached a redacted version of Plaintiff's Amended Complaint. (Doc. 1-1.) The Court subsequently ordered Plaintiff to re-file the Amended Complaint subject to Rule 5.2 of the Federal Rules of Civil Procedure which governs redactions in federal pleadings, (Doc. 14), which Plaintiff did, (Doc. 15). The Court refers to the unredacted Amended Complaint, (Doc. 15), for ease of reference.

Beginning on or about March 15, 2022, Plaintiff worked as a supervisor in the Accounting Unit within the Circuit Clerk's Office for the 16th Circuit Court. (*Id.* at ¶¶ 7, 17, 25.) They had been promoted to this supervisory role after approximately five weeks of starting with the Accounting Unit. (*Id.* at ¶ 26.) Plaintiff alleges that over the next year, with Plaintiff as a supervisor, the Accounting Unit's error rate decreased to one mistake per month (reduced from seven mistakes per week) and Plaintiff was nominated for (and received) a leadership award. (*Id.* at ¶¶ 28, 29, 30.)

In April 2023, an internal LGBTQ+ taskforce that Plaintiff had been asked to chair was disbanded. (*Id.* at ¶¶ 73 & 76.) On or about April 18, 2023, Plaintiff's partner—a transgender woman—went to the Clerk's Office to submit a name-change petition to change their first and middle names to match their gender identity. (*Id.* at ¶¶ 32 & 34.) Plaintiff's supervisor, Jenna Nieves, asked Plaintiff about the name change and learned at that time that Plaintiff was dating a transgender woman and that Plaintiff was a "member of the LGBTQ+ community." (*Id.* at ¶¶ 34 & 35.) Plaintiff alleges that the next day, they were placed on "corrective actions status" for various reasons that had not previously been raised with them, including:

> [failing to] bring a derogatory comment about the department made by an employee to upper management's attention, that they allegedly gossiped and socialized too much with their co-workers, they displayed a lack of professional dress and conduct, they failed to address an employee being late several days in a row, and [they] did not follow the directions given by upper management.

(*Id.* at ¶ 37.)

Plaintiff alleges that on the same day they were placed on corrective actions status, Ms. Nieves and Tracy Smedly, Circuit Court Deputy Court Administrator, held a meeting, during which Ms. Smedly "yelled at Plaintiff commanding them to sit there, shut up, and listen" after Plaintiff "attempted to discuss or respond to the issues raised . . . ." (*Id.* at ¶¶ 42 & 43.) This triggered Plaintiff's PTSD. (*Id.* at ¶ 44.) Plaintiff used sick time "to recover emotionally from being talked to in such a manner." (*Id.*) Plaintiff alleges that Ms. Nieves and Ms. Smedly "knew about [their] trauma history" and that yelling "would trigger a PTSD event . . . ." (*Id.* at ¶ 45.)

The "corrective actions status," like a performance improvement plan, required that Plaintiff meet with Ms. Nieves and Ms. Smedly at least once a week to discuss Plaintiff's progress. (*Id.* at ¶ 46.) Plaintiff was initially placed on corrective actions status for approximately four months, or until September 1, 2023. (*Id.* at ¶ 47.) Plaintiff alleges that during these four months they "bec[a]me hyper-vigilant," (*id.* at ¶ 48), stopped socializing (although others were allowed to

do so), had to pay "special attention to the work they submitted," and that they "changed how they dressed on days they would be outside of their work cubicle," (*id.* at ¶ 49).

Plaintiff alleges that they "overheard employees standing outside or around [Ms.] Nieves' office door speaking loudly and socializing" and that while Ms. Nieves would close her door to block the noise from others, Ms. Nieves left the door open when meeting with Plaintiff. (*Id.* at ¶¶ 51 & 52.) Plaintiff alleges that despite making "all the changes requested of them," the weekly meetings with Ms. Nieves and Ms. Smedly indicated that Plaintiff was not making progress on the alleged deficiencies or problem areas. (*Id.* at ¶ 54.) When Plaintiff asked for specific guidance for the areas of improvement, they were told that "if they had to ask for hard parameters then they w[ere] not appropriately fit to be a supervisor." (*Id.* at ¶ 56.) Plaintiff's removal from corrective action status was initially delayed for one week for "personal reasons" until September 8, 2023. (*Id.* at ¶ 58.) On September 8, 2023, however, Plaintiff was told that the corrective actions status "would continue indefinitely" because Plaintiff had not made satisfactory improvements. (*Id.* at ¶ 59.) Plaintiff alleges that the employees they supervised were told to report any issues to Ms. Nieves and that Plaintiff "was prohibited from conducting" training and check-ins while on corrective actions status. (*Id.* at ¶ 60.)

Plaintiff made a formal complaint to Human Resources in September 2023. (*Id.* at ¶ 65.) They allege that the subsequent investigation did not substantiate Plaintiff's allegations of sex discrimination but that "HR . . . did imply that Plaintiff's other complaints of discrimination had in fact been substantiated." (*Id.* at ¶ 67.) Following the investigation, Plaintiff accepted a transfer to the Family Court Division in the 16th Circuit Court. (*Id.* at ¶ 66.) Plaintiff alleges that the new position was not a supervisory position and that they were "isolated in a singular office," were not given direction about job duties, and were denied access to the files they were responsible to review for service information. (*Id.* at ¶¶ 70, 71, 72.) Plaintiff alleges that they had been "compelled to accept" this transfer "to get out of the hostile work environment working directly under Nieves and Smedly." (*Id.* at ¶ 66.)

Plaintiff subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights on January 9, 2024. (*Id.* at ¶ 12.) This lawsuit followed. In the Amended Complaint, Plaintiff asserts the following claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of

1964 (“Title VII”), the Americans with Disabilities Act (“ADA”), and the Missouri Human Rights Act (“MHRA”):

(1) Sex Discrimination – Count 1 (Title VII) and Count 2 (MHRA);

(2) Sex Discrimination (Hostile Work Environment) – Count 3 (Title VII) and Count 4 (MHRA);

(3) Race Discrimination – Count 5 (Title VII) and Count 6 (MHRA);

(4) Disability Discrimination – Count 7 (ADA) and Count 8 (MHRA);

(5) Religious Discrimination – Count 9 (Title VII) and Count 10 (MHRA); and

(6) Retaliation – Count 11 (Title VII) and Count 12 (MHRA).

(*Id.* at 11-29.)

**Legal Standard**

The federal pleading rules provide that a pleading must contain “a short and plain statement of the claim showing the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may challenge a pleading’s legal sufficiency in a motion to dismiss. To survive a motion to dismiss pursuant to Rule 12(b)(6), “a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim for relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Wilson v. Ark. Dep’t of Hum. Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation marks omitted).

While a complaint does not need to include detailed factual allegations, the complaint must allege “more than a sheer possibility that a defendant acted unlawfully” to survive a motion to dismiss. *Wilson*, 850 F.3d at 371. When considering a motion to dismiss for failure to state a claim, the well-pleaded allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). However, the Court is “free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.” *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

In the employment-discrimination context, federal courts generally apply the so-called *McDonnell Douglas*[2] burden shifting framework to analyze or consider discrimination claims under both federal and state law. *See Joseph v. Thomas-Grace Constr., Inc.*, 183 F.4th 960, 966 (8th Cir. 2026); *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007). Under the *McDonnell Douglas* burden shifting analysis, "[o]nce the plaintiff establishes a prima facie case [of discrimination], the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011). If the employer does so, the plaintiff must show that the employer's proffered reason was pretext for discrimination. *Id.*

At the early pleadings stage, a plaintiff is not required to plead facts sufficient to establish a prima facie showing of discrimination to satisfy the plaintiff's burden under the *McDonnell Douglas* burden shifting framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "[T]he prima facie model is an evidentiary, not a pleading, standard." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). A plaintiff need not "set forth a detailed evidentiary proffer in a complaint," including to make a prima facie showing of discrimination. *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citation omitted). But still, "[t]he allegations in a complaint must give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*." *Id.* (internal quotation marks omitted) (emphasis removed). Under the proper standard of review, then, the elements of a prima facie case "are part of the background against which a plausibility determination should be made," and "may be used as a prism to shed light upon the plausibility of the claim." *Id.* (internal quotation marks omitted).

**Discussion**

Defendant 16th Circuit Court argues that Plaintiff's claims for Sex Discrimination (Counts 1 and 2), Race Discrimination (Counts 5 and 6), Disability Discrimination (Counts 7 and 8), and Religious Discrimination (Counts 9 and 10) should be dismissed under Rule 12(b)(6) for failure to state a claim.[3] In addition, Defendant 16th Circuit Court argues that any claim of discrimination arising prior to March 15, 2023, is barred for failure to file a timely charge of discrimination.

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[3] Defendant 16th Circuit Court did not include Plaintiff's claims of Sex Discrimination (Hostile Work Environment) asserted in Counts 3 and 4 or Retaliation asserted in Counts 11 and 12 in the partial motion to dismiss but instead filed an answer. (*See* Docs. 5 & 6.)

## I. Race Discrimination (Counts 5 and 6) and Religious Discrimination (Counts 9 and 10)

First, Plaintiff concedes that the claims for Race Discrimination (Counts 5 and 6) and Religious Discrimination (Counts 9 and 10) are "tenuous" and indicates that Plaintiff "abandons those claims." (Doc. 8 at 6.) Defendant 16th Circuit Court's partial motion to dismiss as to Counts 5, 6, 9, and 10 is therefore **GRANTED**.

## II. Sex Discrimination (Counts 1 and 2)

In Counts 1 and 2, Plaintiff asserts claims of sex discrimination under both Title VII of the Civil Rights Act and the MHRA. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). The MHRA similarly provides that it is an unlawful employment practice "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of" an employee's sex. Mo. Rev. Stat. § 213.055.1(1)(a).

A prima facie showing of sex discrimination under Title VII and the MHRA considers whether (1) the plaintiff belongs to a protected class, (2) the plaintiff was meeting the employer's legitimate job expectations, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated differently than similarly situated employees who do not belong to the same protected class. *See Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087 (8th Cir. 2015) (Title VII); *see Lampley v. Mo. Comm'n on Hum. Rights*, 570 S.W.3d 16, 24 (Mo. banc 2019) (MHRA). As to the fourth element, the ultimate inquiry is whether there are sufficient facts that plausibly suggest or support an inference of unlawful discrimination. *See Williams v. Groundworks*, No. 4:21-CV-00621-BCW, 2022 WL 497537, at *2 (W.D. Mo. Feb. 16, 2022), *summarily aff'd*, No. 22-1357, 2022 WL 3392967 (8th Cir. Apr. 4, 2022); *Evans v. Blanton Constr. Co.*, No. 4:17-CV-1389 SPM, 2018 WL 3375092, at *5 (E.D. Mo. July 11, 2018), *aff'd*, 770 F. App'x 322 (8th Cir. May 17, 2019) (per curiam) (unpublished).

Defendant 16th Circuit Court argues that Plaintiff fails to plead facts supporting a plausible connection between their gender identity and an adverse employment action that gives rise to an inference of unlawful discrimination based on Plaintiff's sex, focusing on the causation/inference-of-discrimination element. The Court disagrees. Plaintiff alleges that they are a "nonbinary person assigned the sex of female at birth" and that the day after their supervisor, Ms. Nieves, learned

about their gender identity, i.e., that they were a "member of the LGBTQ+ community,"[4] Plaintiff was placed on corrective actions status for deficiencies that had not been previously raised with them. (Doc. 15 at ¶¶ 35, 38.) Close temporal proximity is sufficient to demonstrate causation in considering a prima facie showing of discrimination under Title VII or the MHRA. *See Wierman v. Casey's Gen'l Stores*, 638 F.3d 984, 994 (8th Cir. 2011). Defendant 16th Circuit Court's motion to dismiss Counts 1 and 2 for failure to state a claim as to causation/inference of discrimination is accordingly **DENIED without prejudice**.[5]

---

[4] Although somewhat unartfully pleaded in the Amended Complaint or described in the motion-to-dismiss briefing, the Court understands Plaintiff's reference to being a "member of the LGBTQ+ community" as referring to their gender identity, i.e. as a nonbinary person assigned the sex of female at birth. Defendant 16th Circuit Court construes the Amended Complaint too narrowly as asserting a claim premised on the theory that they were placed on corrective actions status after Ms. Nieves learned about Plaintiff's sexual orientation. Instead, the Amended Complaint alleges that the corrective actions status was imposed "after [the discovery of] Plaintiff's sexuality *and* gender identity." (Doc. 15 at ¶ 39.) Defendant 16th Circuit Court does not argue at this juncture that an employee's gender identity is not a protected class under Title VII and the MHRA.

[5] Because the Court disagrees with Defendant 16th Circuit's principal argument that the Amended Complaint fails to state a claim in Counts 1 and 2 for sex-discrimination under Title VII and the MHRA on the causation element, the Court does not at this juncture address the parties' alternative arguments concerning disparate treatment and sex stereotyping to support the causation/inference-of-discrimination element of a sex discrimination claim under Title VII and the MHRA.

Additionally, the Court notes that Defendant 16th Circuit Court raises for the first time in its reply brief the argument that the Amended Complaint fails to state a claim for sex discrimination because the Amended Complaint fails to "plead [Plaintiff] suffered an adverse employment action." In addition, Defendant 16th Circuit Court refers for the first time in its reply brief to Counts 3 and 4 (asserting federal and state sex-discrimination claims for hostile work environment). (*See* Doc. 9 at 3 (inclusively seeking dismissal of "Counts [1-4]") & 6-7 (asserting that the Amended Complaint fails to plead an adverse action as to sex discrimination claims).) Defendant 16th Circuit Court's motion to dismiss lacks any reference to Counts 3 and 4 and is presented as a "partial motion to dismiss." (*See generally* Doc. 6 (seeking dismissal of and referencing only Counts 1, 2, 5-10).) Moreover, the motion to dismiss as to Counts 1 and 2 does not argue that Plaintiff failed to sufficiently allege an adverse action but instead focuses solely on causation/inference-of-discrimination element.

"Issues raised for the first time in a reply [brief] are typically considered waived." *Hausmann Constr., Inc. v. Woodbury Cnty. Law Enf't Ctr. Auth.*, No. C25-4041-LTS, 2026 WL 1587115, at *8 n.4 (N.D. Iowa June 3, 2026). The Court declines to consider these new arguments raised for the first time in Defendant 16th Circuit Court's reply brief. *See Highlands Dev., LLC v. AMK Mgmt. Realty Corp*, No. 23-00340-CV-W-WBG, 2023 WL 8004852, at *6 (W.D. Mo. Nov. 17, 2023). The Court notes, however, that the defense of failure to state a claim under Rule 12(b)(6) is not subject to waiver and may be considered if properly raised as this case proceeds. *See* Fed. R. Civ. P. 12(h).

## III. Disability Discrimination (Counts 7 and 8)

In Counts 7 and 8, Plaintiff asserts a claim of disability discrimination under both the ADA and the MHRA. Federal and state law make it unlawful for an employer to discriminate against an employee because of a disability. *See* 42 U.S.C. § 12112(a); Mo. Rev. Stat. § 213.055.1(1). A prima facie showing of disability discrimination considers whether a plaintiff (1) is disabled, as defined under the law, (2) is "qualified to perform the essential functions of the job with or without reasonable accommodation," and (3) "suffered an adverse employment action because of [their] disability." *Olsen v. Cap. Region Med. Ctr.*, 713 F.3d 1149, 1153 & 1154 (8th Cir. 2013) (internal quotation marks omitted).

Defendant 16th Circuit Court again focuses on whether Plaintiff has alleged sufficient "facts which connect their alleged disability with any adverse employment action of Defendant." (Doc. 6 at 9.) Specifically, Defendant 16th Circuit Court argues that "Plaintiff provides no factual support regarding any link between their alleged disability [of PTSD] and any adverse employment action."[6] (*Id.*) In a word, Defendant 16th Circuit Court again focuses on causation. As to Counts 7 and 8, however, and unlike as to Counts 1 and 2 discussed above, the Court agrees that the Amended Complaint is conclusory and fails to state a claim for disability discrimination in this regard.

Plaintiff alleges that their supervisors, Ms. Nieves and Ms. Smedly, "yell[ed]" at them to "sit there, shut up, and listen," knowing that they had PTSD.[7] (Doc. 15 at ¶ 45.) A supervisor's mere knowledge of an employee's disability is insufficient to demonstrate a prima facie case "absent evidence that creates an inference of discrimination." *Reach v. AlliedSignal, Inc.*, 184 F. Supp. 2d 932, 941 (W.D. Mo. 2000); *see also Christopher v. Adam's Mark Hotels*, 137 F.3d 1069,

---

[6] Again, in the reply brief, Defendant 16th Circuit Court asserts for the first time as to Counts 7 and 8 that "[n]ot only has Plaintiff . . . provided no causal link between the alleged adverse actions and their disability, neither instance Plaintiff cites qualifies as an adverse action" under federal or state law. (Doc. 9 at 1.) The Court declines at this juncture to address the new argument concerning the adverse-action element of these claims raised by Defendant 16th Circuit Court for the first time in its reply. *See* n. 5, *supra*.

[7] To the extent Plaintiff's motion-to-dismiss briefing refers to their ADHD and argues that they allege disability discrimination to the extent their difficulty focusing (as a result of their ADHD) was listed as a problem in the weekly corrective actions status performance reviews with Ms. Nieves and Ms. Smedly, the Amended Complaint does not allege that they have ADHD or that their ADHD is a disability as defined by the relevant law. Counts 7 and 8 instead focus only on Plaintiff's asserted PTSD disability . (*See* Doc. 15 at 19-22.)

1073 (8th Cir. 1998) ("[m]ere knowledge of a disability cannot be sufficient to show pretext" but the analysis requires some evidence that the adverse employment action "was a result of" the employer's knowledge of an employee's disability). And as Defendant 16th Circuit Court argues, Plaintiff does not allege beyond a mere conclusory assertion that they were "subjected . . . to disparate treatment . . . because of their disability (PTSD)." (Doc. 15 at ¶ 79.) Plaintiff does not point to any factual allegations in the Amended Complaint plausibly supporting the conclusory and generalized assertion that they were subject to disparate treatment because of their disability or any other facts to support a plausible inference that any actionable adverse employment action was taken against them because of their disability. Defendant 16th Circuit Court's motion to dismiss Counts 7 and 8 is accordingly **GRANTED**.

## IV. Statutory Claim-Filing Limitations Period

Finally, Defendant 16th Circuit Court argues that based on the date Plaintiff filed the underlying charge of discrimination—January 9, 2024—any claim of discrimination asserted under federal law "arising prior to 300 days before that date [or March 15, 2023,] is barred . . . ." (Doc. 6 at 12.) *See* 42 U.S.C. § 2000e-5(e)(1).[8] The requirement that a plaintiff first exhaust administrative remedies by filing a timely charge of discrimination with the EEOC is a non-jurisdictional claim processing rule applicable to federal employment discrimination claims. *Fort Bend County v. Davis*, 587 U.S. 541, 550-51 (2019). Defendant 16th Circuit Court does not identify a particular claim that it asserts is barred under the exhaustion requirement but seeks a ruling that "any events alleged prior to March 15, 2023, are time-barred." While Defendant 16th Circuit Court accurately states the law, the factual basis for its motion to dismiss is somewhat unclear.

As Defendant 16th Circuit Court correctly observes, the Amended Complaint refers to the underlying Charge of Discrimination[9] as "outlin[ing] allegations of discrimination beginning as early as March 1, 2023, and continuing through the present." (Doc. 15 at ¶ 12; *see id.* at ¶ 94 (as

[8] Plaintiff's state-law employment-discrimination claims under the MHRA are subject to a 180-day statutory deadline from "the alleged discriminatory act" to file a charge of discrimination. Mo. Rev. Stat. § 213.075.1. In this section of the motion to dismiss, Defendant 16th Circuit Court only appears to address federal discrimination claims.

[9] The Court did not locate the underlying Charge of Discrimination as an attachment to Plaintiff's Amended Complaint or the parties' motion-to-dismiss briefing and the Charge does not appear to have been included in the state court record attached to Defendant's Notice of Removal.

to Count 1, stating "[t]he foregoing conduct continued throughout Plaintiff's employment with Defendant from at least March 1, 2023, through the present").) Looking at the rest of the Amended Complaint, however, as best as the Court can discern (and as primarily discussed by the parties in the context of this motion to dismiss), the relevant dates for Plaintiff's Title VII sex-discrimination claim[10] appear to be (1) April 18, 2023, when Plaintiff's partner submitted a name-change petition at the Clerk's Office; (2) April 19, 2023, when Plaintiff was placed on corrective actions status, and (3) thereafter while Plaintiff remained on corrective actions status through sometime in September 2023. To the extent Defendant 16th Circuit Court also refers to Plaintiff's allegations concerning Ms. Nieves' earlier decision to disband an internal LGBTQ+ taskforce for which Plaintiff had been serving as the chairperson, the Amended Complaint alleges that the last meeting occurred "approximately one month before" the April 2023 events, or approximately March 18, 2023, and that the taskforce was disbanded "[j]ust prior to April 2023." (*Id.* at ¶¶ 74 & 76.)

"Failure to exhaust administrative remedies is an affirmative defense that a defendant must prove." *Kirklin v. Joshen Paper & Packaging of Ark. Co.*, 911 F.3d 530, 534 (8th Cir. 2018); *see Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007). Dismissal at the early pleadings stage relying on an affirmative defense is only appropriate if the affirmative defense "is apparent on the face of the complaint." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (internal quotation marks omitted). Here, it is not clear from the face of the Amended Complaint that any claim of sex discrimination set out in Count 1 is time-barred under the exhaustion requirement. Plaintiff's discrete claim of sex discrimination under Title VII appears to focus on the April 19, 2023 corrective actions status and does not appear to rest on a discrete claim of discrimination that arose prior to March 15, 2023. Defendant 16th Circuit Court's motion to dismiss under 42 U.S.C. §§ 2000e-5(e)(1) is accordingly **DENIED without prejudice**.

[10] As noted above, neither Plaintiff's Title VII claim for hostile work environment (Count 3) nor Title VII retaliation (Count 11) are before the Court in this partial motion-to-dismiss proceeding. Moreover, as to Count 3, asserting a Title VII claim for hostile work environment, for that kind of claim, which is not based on a discrete act, a plaintiff "need only file [their] charge within 300 days of at least one act that is part of the hostile work environment." *Slayden v. Ctr. for Behavioral Med.*, 53 F.4th 464, 467 (8th Cir. 2022). Defendant 16th Circuit Court does not appear to argue that Count 3 is time-barred but focuses instead only on a potentially barred "discrete" claim of discrimination.

## Conclusion

Therefore, after careful consideration and review, and for the reasons explained above, the Court **ORDERS** that the partial motion to dismiss is **GRANTED in part** as to Counts 5-10 and is **DENIED in part** as to Counts 1 and 2. Counts 5-10 are **DISMISSED without prejudice** for failing to state a claim, with Counts 1 and 2 remaining, alongside Counts 3, 4, 11, and 12 which were not addressed in the partial motion to dismiss.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 23, 2026